United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sonneet R. Kapila, Liquidating Trustee of the SMF Energy Liquidating Trust, Plaintiff, <br><br> v. <br><br> Grant Thornton, LLP, Defendant. | Civil Action No. 14-61194-Civ-Scola |

### Order on Report and Recommendation and Reopening Case

Plaintiff Sonneet R. Kapila, as the liquidating trustee of the SMF Energy Liquidating Trust, seeks to recover damages from Grant Thornton, LLP for the accounting firm's failure to detect, prevent, or halt various corporate billing and financial improprieties that ultimately led to SMF Energy Corporation's bankruptcy. The Trustee's complaint contains six counts against Grant Thornton, only three of which are under consideration here: Count 1, professional negligence and accounting malpractice; Count 2, negligent misrepresentation; and Count 3, aiding and abetting breaches of fiduciary duty. Upon referral to the bankruptcy court, the parties filed cross motions for partial summary judgment. The bankruptcy court, noting only that the 2700 pages of exhibits attached to the motions "indicate[] that there are genuine issues of material fact," summarily recommended the denial of the motions. (Bankr. Court's Rep. and Rec., ECF 7-2, 3.) The parties have both objected, in this Court, to certain aspects of the recommendation. Upon the Court's de novo review, the Trustee's objections (**ECF No. 8**) are **overruled** and Grant Thornton's objections (**ECF No. 9**) are **sustained**. The bankruptcy court's report and recommendation (**ECF No. 7-2**) is thus **accepted in part** and **rejected in part** as detailed below.

1. **Standard of review**

The Court reviews de novo those portions of the bankruptcy judge's report and recommendation to which the parties have objected. Fed. R. Bankr. P. 9033(d). In evaluating the parties' underlying motions for summary judgment, the Court applies the familiar legal standard. "Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and the like show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (punctuation & citation omitted). "[T]o survive summary judgment, the nonmoving party must . . . make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.*

2. **Factual summary**

There is no disagreement between the parties about the following. SMF Energy provided mobile fuel services to companies that had fleets of vehicles, either by delivering the fuel to storage tanks or by directly fueling the vehicles owned by the companies. (Compl. at ¶ 10, ECF No. 1, 3; Def.'s Objs., ECF No. 9, 2.) Grant Thornton, an accounting firm, audited SMF's financial statements for the fiscal years that ended in June 30, 2005 through at least June 30, 2011. (Def.'s Objs. at 2; Pl.'s Objs., ECF No. 8, 4–5.) Through a billing sleight of hand, SMF Energy systematically and intentionally overbilled many of its customers. (Compl. ¶ 11; Pl.'s Resp., ECF No. 12, 1.) After many years of this practice, which appears to have begun in 2004 (Pl.'s Objs. at 5), and which continued and expanded throughout Grant Thornton's tenure, certain SMF directors eventually became aware of the scheme (Pl.'s Resp. at 1). Once the overbilling practice was terminated, in 2012, SMF Energy was driven into bankruptcy, saddled with over $75 million in creditor claims. (*Id.*)

3. **Grant Thornton is entitled to summary judgment as to the Trustee's claims for professional negligence and accounting malpractice (Count 1 of the complaint); negligent misrepresentation (Count 2); and aiding and abetting a breach of fiduciary duty (Count 3).**

The Trustee argues in its motion for partial summary judgment and objections that Grant Thornton's affirmative defense of *in pari delicto* is inapplicable to this case. (Pl.'s Objs. at 1.) Grant Thornton, conversely, submits in its cross motion for partial summary judgment and in its objections that its affirmative defense of *in pari delicto* bars Counts 1, 2, and 3 of the Trustee's complaint. (Def.'s Objs. at 1–2.)

The common law defense of *in pari delicto* is based on "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 583 (Fla. 2013) (quoting Black's Law Dictionary 806 (8th ed. 2004)). The defense is applied where the plaintiff is at least as at fault as the defendant for the injury for which the plaintiff seeks compensation. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1154 (11th Cir. 2006) (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306–309 (1985) ("in its classic formulation, the *in pari delicto* defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury," and "where a plaintiff truly bore at least substantially equal responsibility for the violation, a defense based on such fault . . . should be recognized.")). The doctrine serves two purposes: precluding courts from entangling "their good offices [in] mediating disputes

among wrongdoers" and "deterring illegality" by "denying judicial relief to an admitted wrongdoer." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. 2d DCA 2007).

According to the Trustee though, a defendant who has a duty to detect the very wrongdoing alleged is foreclosed from relying on its own failures in order to shield itself from liability with an *in pari delicto* defense. The Trustee's theory, however, is contrary to Florida law. Instead, under Florida law, "[w]here it is shown, without dispute, that a corporate officer's fraud intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud." *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. 2d DCA 1992). Here, there is no dispute that SMF Energy was overbilling its customers. (*E.g.*, Pl.'s Resp. at 1.) By the Trustee's own allegations in the complaint, this invoice subterfuge was intended to, and did, benefit SMF Energy. (*E.g.*, Compl. ¶¶ 14, ("[T]hese improper and hidden charges grew to become a significant percentage of the revenue and business model of the [SMF Energy]."); 86 (noting that the overbilling resulted in excess profits for the company of: over $10 million in 2008; over $11 million in 2009; over $13 million in 2010; and over $15 million in 2011); and 99 (explaining that the revenue obtained from the overbilling "was pure (albeit improper) profit for the company").) There can be no dispute that the overbilling was to the detriment of outsiders—that is, SMF Energy's clients—and to the benefit of SMF Energy itself. Under Florida law then, even if Grant Thornton was hired to detect activities such as the overbilling, it is nonetheless entitled to rely on the *in pari delicto* defense as a bar to the Trustee's claims under Counts 1, 2, and 3.[1]

The Trustee's reliance on *In re E.S. Bankest, L.C.*, is unavailing. No. 04-17602-BKC-AJC, 2010 WL 1417732, at *7 (Bankr. S.D. Fla. Apr. 6, 2010). The Court finds the reasoning relied upon in that case to be neither persuasive nor

---

[1] This is consistent with the law in many other jurisdictions as well. For example, the Eighth Circuit has held that that a bankruptcy trustee is barred under *in pari delicto* from bringing a negligence claim against parties who facilitated the debtor's fraudulent investment when the debtor itself knew of the fraudulent nature of the investments. *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir.2005). Likewise, the Second Circuit has barred an action against a debtor's accounting firm for breach of fiduciary duty when the firm failed to disclose negative information, of which the debtor was aware, relating to a merger and acquisition. *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 152 (2d Cir.2003). The Sixth Circuit has even prohibited a debtor from recovering damages from its lawyers who knew about, but failed to disclose, a debtor's investor fraud scheme. *Terlecky v. Hurd (In re Dublin Sec., Inc.),* 133 F.3d 377, 380–81 (6th Cir.1997).

or applicable here. To begin with, in *Bankest*, certain officers there had looted the debtor company for their own benefit. *Id.* at *7. Here, there have been no allegations of looting and the fraud perpetrated benefitted the company itself. Additionally, the *Bankest* court relied on New Jersey law, which is at odds with Florida law, to support its conclusion that a defendant "cannot avail itself of the imputation defense based on [a company's officer's] fraud when [the defendant] specifically agreed to detect that very fraud." *Id.* (citing *NCP Litig. Trust v. KPMG, LLP*, 187 N.J. 353, 372 (N.J. 2006)). That supposition runs directly counter to the notion that, under Florida law, a corporation should be "barred from shifting the responsibility for [its own] fraud to [its] auditors." *Gee*, 625 So. 2d. at *2 (citing with approval *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.1982)).

The Trustee also argues that Grant Thornton's *in pari delicto* defense fails because Grant Thornton and SMF Energy were not "engaged in the same wrongdoing." (Pl.'s Resp. at 4.) This argument misses the mark. SMF Energy grossly overbilled many of its customers. The Trustee alleges that this overbilling was allowed to continue, unabated, because of Grant Thornton's negligent accounting practices, misrepresentation of SMF Energy's true financial condition, and facilitation of the improper billing procedures. (Compl. ¶¶ 106 (noting that SMF Energy's "outside professionals . . . continued to be willfully blind to the pervasive and improper billing practices"), 114 (complaining that "[n]one of SMF's professionals took any meaningful steps to stop the [overbilling] practice"), 143 (stating that Grant Thornton failed "to uncover the ongoing series of improper business practices and irregularities being engaged in"), 152 (setting forth that "Grant Thornton negligently misrepresented . . . the true financial condition of the Debtors"), and 162 (describing Grant Thornton's "substantial assistance" of SMF Energy's breaches of fiduciary duty).) Both parties then were, according to the Trustee's own allegations, certainly "engaged in the same wrongdoing": that is, the improper overbilling scheme and financial misrepresentations.

The Trustee's contention that the improper billing activity cannot be imputed to SMF Energy similarly falls short. According to the Trustee, where, as here, there were several directors and audit committee members who had the ability to halt the wrongdoing, and would have done so had they known of it, the wrongdoing cannot be imputed to the company—thus foreclosing an *in pari delicto* defense. The Trustee misconstrues the imputation rule. It is only "[w]hen a corporate agent engages in misconduct that is calculated to benefit the agent and to harm the corporation, [that] the agent has effectively ceased to function within the course and scope of the agency relationship with the corporation." *O'Halloran*, 969 So. 2d at 1045). That is, when acting only for his

own benefit, an agent has "forsaken the corporation," and therefore such an agent's actions will not be imputed to the corporation. Here, however, as set forth above, the overbilling was "intended to and did benefit the corporation, to the detriment of outsiders." *Gee*, 625 So. 2d at 3. Under Florida law, whether liability for the scheme, once it was uncovered, ultimately fell on the plaintiff company, is not the relevant inquiry for determining whether the wrongdoing benefited the company in the first instance. *Id.* (citing *Cenco*, 686 F.2d at 456). Instead, Florida law looks to whether the corporate actors, rather than looting the company, are instead "turning the company into an engine of theft against outsiders"—as was the case here. *Gee*, 625 So. 2d 1, 3 (quoting *Cenco*, 686 F.2d at 454). "It is the short-term benefit or detriment to [the company] that is important." *Id.* (quoting an unpublished slip opinion from 1983 in *Security America Corp. v. Schacht*, Case No. 82-C-2132, from the United District Court for the Northern District of Illinois). Even where the fraud ultimately results in company's collapse, Florida law bars a corporation "from shifting the responsibility for . . . fraud to the auditors." *Id.* at 2 (citing *Cenco*, 686 F.2d at 456).

Lastly, the Trustee cites no binding authority to support its contention that Grant Thornton must explicitly admit its wrongdoing in order to avail itself of an *in pari delicto* defense. Instead, the Court finds persuasive support for the contrary: so long as the face of the complaint allows a court to determine that the wrongdoing of the plaintiff was at least equal to the *alleged* wrongdoing of the defendant, the *in pari delicto* doctrine may be applied. *Cf. In re Skyway Commc'ns Holding Corp.*, 389 B.R. 801, 810 (Bankr. M.D. Fla. 2008) (citing *May v. Nygard Holdings Ltd.*, No. 6:03CV1832-ORL-DAB, 2007 WL 2120269, at *1 (M.D. Fla. July 20, 2007) and *O'Halloran*, 969 So. 2d at 1047 for the proposition that resolution of an *in pari delicto* defense is premature unless a court can evaluate whether the wrongdoing of the plaintiff is at least equal to the *alleged* wrongdoing of the defendant). That is, the Court finds the plaintiff's allegations of the defendant's wrongdoing sufficient. *In re Verilink Corp.*, 405 B.R. 356, 362 (Bankr. N.D. Ala. 2009) (noting that the Eleventh Circuit has determined that the defense of *in pari delicto* precludes a bankruptcy trustee from asserting claims against service providers where the defendant's wrongdoing is merely alleged but not admitted). It is clear to the Court that a defendant need not affirmatively admit any wrongdoing in order to avail itself of the *in pari delicto* defense. Instead, in evaluating such a defense, a court need only compare the plaintiff's own acknowledged wrongdoing (here, the overbilling practices and breaches of fiduciary duty) with the wrongdoing of the defendant as alleged by the plaintiff (here, allowing the overbilling to continue and assisting the breaches of fiduciary duty). Upon that review, the Court finds

SMF Energy's responsibility for the overbilling scheme to be at least equal, if not far outweigh, Grant Thornton's responsibility, even if all of the allegations against Grant Thornton were found to be true.

In short, there are no genuine issues of material fact regarding the application of the *in pari delicto* doctrine to this case. Grant Thornton is entitled to rely on the defense as a matter of law and is therefore granted partial summary judgment in its favor on Counts 1, 2, and 3. Accordingly, after a de novo review of the objected to aspects of the bankruptcy court's report and recommendation, the Court rejects the bankruptcy court's conclusion that this issue should be determined through a trial before this Court. Because the Court grants partial summary judgment in Grant Thornton's favor based on the application of the *in pari delicto* doctrine to this case, it declines to address Grant Thornton's arguments regarding: its wrongful conduct defense; the Trustee's lack of standing; and Grant Thornton's lack of knowledge of the fraud.

### 4. Conclusion

The Court rejects the bankruptcy court's recommendation that Grant Thornton's motion for partial summary judgment on Counts 1, 2, and 3 of the Trustee's complaint be denied. The Court finds that those counts are barred by the doctrine of *in pari delicto*. Summary judgment is thus granted in Grant Thornton's favor on those three counts. Consequently, the Trustee's objections to the bankruptcy court's recommendation that the Trustee's motion on the applicability of the *in pari delicto* defense be denied are overruled. The Court therefore accepts the bankruptcy court's recommendation in that regard. The parties did not object to any other aspects of the bankruptcy court's report and recommendation.

The bankruptcy court has indicated that after the Court enters a final order regarding the parties' motions for partial summary judgment, this case will be ready for trial. (Bankr. Court's Rep. and Rec., ECF No. 7-2, 3.) As such, the **Clerk is directed to reopen** this case at which time the Court will then enter a scheduling order setting this case for jury trial in order to resolve the remaining counts in the Trustee's complaint: that is Counts 4, 5, and 6. Once the case has been placed on the trial calendar, the **bankruptcy court will transfer** the case back to this Court.

**Done and ordered**, in chambers at Miami, Florida, on March 9, 2017.

_____
Robert N. Scola, Jr.
United States District Judge