UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:14-cv-61194-Civ-Scola

SONEET R. KAPILA, Liquidating Trustee
of the SMF Energy Liquidating Trust,

Plaintiff,

v.

GRANT THORNTON LLP, an Illinois
Limited Liability Partnership,

Defendant.
_______________________________________/

**DEFENDANT GRANT THORNTON LLP'S OPPOSITION TO THE TRUSTEE'S AMENDED MOTION FOR RECONSIDERATION**

Grant Thornton LLP ("Grant Thornton") opposes the Trustee's amended motion for reconsideration. Reconsideration is an extraordinary remedy, to be used only when the controlling law has changed, new evidence has come to light, or the court committed clear error. Here, the controlling law has not changed, no new evidence has surfaced, and the Court committed no error. The Court got it right. The Trustee's motion for reconsideration should be denied.[1]

## I. INTRODUCTION

The Trustee's motion is a rehash of arguments he already made in his summary judgment briefing and objections, with some brand new arguments sprinkled in for good measure. None of the Trustee's arguments meets the narrow criteria for granting a motion for reconsideration. Nor do the arguments pass muster on their merits. The Trustee's arguments (just like they did in his

[1] In light of its *in pari delicto* ruling, the Court declined to address Grant Thornton's arguments regarding its wrongful conduct defense, the Trustee's lack of standing, and Grant Thornton's lack of knowledge of the alleged fraud were moot. Order at 6. If the Trustee were to obtain the relief he seeks, those arguments would no longer be moot.

summary judgment briefing) boil down to a bid to immunize bankruptcy trustees altogether from the *in pari delicto* defense. The Eleventh Circuit, however, has already soundly rejected the notion that a bankruptcy trustee gets special treatment when, as here, the trustee asserts claims of the debtor, finding that the Bankruptcy Code subjects a bankruptcy trustee to precisely the same defenses that would have been available had the debtor itself sued the defendant. *See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,* 437 F.3d 1145 (11th Cir. 2006).

Apparently hoping that the Court will be moved to ignore the law if the Trustee can paint a dark enough picture of Grant Thornton, the Trustee's motion ratchets up to new heights his diatribe against Grant Thornton, saying as often as possible that Grant Thornton knew that the IA billing practice was illegal and fraudulent. The evidence does not support this. While Grant Thornton knew about the IA billing practice, Grant Thornton did not know it was illegal or fraudulent. Much to the contrary, SMF had obtained a legal opinion from an attorney and law firm (whom the Trustee is also suing) saying the practice was legal and, every year, Grant Thornton obtained a new letter from that lawyer that never expressed any concern about the billing practice.

The Trustee's effort to conflate knowledge of the IA billing practice with knowledge that SMF was engaging in illegal or fraudulent conduct is so completely off the mark that even the Trustee's own audit expert—the sole expert the Trustee has for proving that Grant Thornton's audits were deficient—rejects it. That expert reviewed Grant Thornton's audit work papers; the Grant Thornton, KPMG, and SMF audit committee member deposition transcripts; the SMF audit committee and board of directors minutes; and many other SMF, Grant Thornton, and KPMG documents, and testified unequivocally that he saw nothing to indicate that Grant Thornton knew that the IA billing practice was illegal or fraudulent.

In its summary judgment briefing, Grant Thornton submitted other evidence that likewise put the lie to the Trustee's accusations and also cited substantial case law showing that, even if the Trustee's accusations were right, they were irrelevant to Grant Thornton's *in pari delicto* defense. The Court correctly concluded that, under Florida law, the *in pari delicto* defense applies even if the auditor knows of management wrongdoing. In short, the Court's summary judgment order appropriately cut to the chase, properly identifying which facts were actually relevant to the arguments and disregarding the Trustee's hyperbole.

The Court also correctly applied Florida agency law to impute to SMF the misconduct of SMF's management. Under that law, the presence of allegedly innocent directors is relevant only where management's wrongdoing did not benefit the company, *e.g.*, where management looted company assets for management's personal use. Accurately finding that looting was not present here and that SMF's revenue was increased by the IA billing practices, the Court correctly determined that those billing practices benefitted SMF and that imputation therefore applied.

In deciding the parties' motions for summary judgment, the Court did exactly what Federal Rule of Civil Procedure 56 and binding precedent called on it to do: carefully review the evidence; decipher what is relevant and what is not; and apply the applicable case law. The Trustee has provided no legitimate reason for the Court to revisit its Order and his motion for reconsideration should be denied.

## II. ARGUMENT

### A. Reconsideration is an Extraordinary Remedy.

"Reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources . . . . The movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived." *Waite v. AII Acquisition Corp.*, 194 F. Supp.

3d 1298, 1307 (S.D. Fla. 2016) (citation omitted). As the court noted in *Grasso v. Electrolux Home Prods., Inc.*, No. CV 15-20774-CIV, 2016 WL 2625746, at *1 (S.D. Fla. Mar. 24, 2016), "[a] motion for reconsideration is not appropriately used as a vehicle to 'relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of [the order].'" (citing *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)). The prohibition on presenting new arguments "includes new arguments that were previously available, but not pressed," *Lopez v. City of W. Miami*, 662 F. App'x 733, 737-38 (11th Cir. 2016) (citations omitted), and denying a motion that "is premised upon an argument that the movant could have, but did not, advance before the district court entered judgment" is appropriate. *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1212 (11th Cir. 2014) (citations omitted).

This extraordinary remedy is proper only when there is "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Waite*, 194 F. Supp. 3d at 1307 (citation omitted). Although high on inflammatory rhetoric, the Trustee's motion meets none of these limited criteria. The Trustee does nothing more than make the same arguments he has made before or advance new arguments he could have previously raised. His motion should be denied.

**B. The Trustee Misconstrues Florida Law on the *In Pari Delicto* Doctrine.**

The Court's decision correctly applies Florida law, including *Earth Trades, Inc. v. T&G Corp*., 108 So. 3d 580 (Fla. 2013), on the *in pari delicto* doctrine. Under Florida law, "the doctrine of *in pari delicto* operates to bar legal remedies when both parties are equally in the wrong, or where the plaintiff had greater responsibility for the wrongdoing than defendant." *In re Gosman*, 382 B.R. 826, 837-38 (S.D. Fla. 2007) (citations omitted); Lisa A. Zakolski, *"In Pari Delicto" Principle; Relative Culpability of Parties*, 22 Fla. Jur. 2d Equity §76 (2016) (recognizing that *in*

*pari delicto* "bar[s] legal remedies when both parties are equally in the wrong, or when the plaintiff had greater responsibility for the wrongdoing than the defendant") (citing *In re Gosman*).

Contrary to the prohibition against presenting new arguments when moving to reconsider, the Trustee argues for the first time in his motion for reconsideration that the *in pari delicto* doctrine applies only when the parties engaged in precisely the same wrongful conduct. Building on this flawed foundation, the Trustee argues that Grant Thornton did not engage in the same "conduct" as SMF did because Grant Thornton did not itself engage in "overbilling SMF's customers or creating financial statements with misrepresentations." Trustee Br. at 7.

The Trustee relies on *Earth Trades* for this argument, but *Earth Trades* is contrary to the Trustee's position. *Earth Trades* says the parties "must participate in the same *wrongdoing*," 108 So. 3d at 583 (emphasis added), not the same *conduct*. As the facts in *Earth Trades* demonstrate, participating "in the same wrongdoing" is not synonymous with engaging in identical conduct: one of the parties in *Earth Trades* was an unlicensed contractor in violation of Florida law and the other party merely hired that contractor knowing that the contractor was violating the law. 108 So. 3d at 583. Notwithstanding that the parties had not engaged in the same conduct, the Florida Supreme Court found they were engaged in the same wrongdoing. *Id*. The facts in *Earth Trades* are similar to the facts here, where the Trustee claims that SMF illegally billed its customers and that Grant Thornton had knowledge of the illegal billing practices. This Court correctly concluded that Grant Thornton's *in pari delicto* defense survives under the "same wrongdoing" standard. Order at 4.

The Trustee's reliance upon *Ekins v. Harbourside Funding, LP*, 2014 WL 4655756 (S.D. Fla. Sept. 17, 2014), *aff'd* 608 F. App'x 803 (11th Cir. 2015), also misses the mark. In that case, the *in pari delicto* defense was not available because the plaintiff's alleged wrongdoing was

unrelated to the dispute at issue. In defending against a claim to enforce a settlement agreement, the defendant based its *in pari delicto* defense on the plaintiff's conduct with respect to another agreement between them. *Id*.

Even when the parties do not participate in the same wrongdoing, Florida's "wrongful-conduct" rule prohibits a party from maintaining "an action based on the party's own illegal conduct." *Kaminer v. Eckard Corp. of Florida, Inc.*, 966 So. 2d 452, 454 (Fla. 4th DCA 2007) (following the rule in *Orzel v. Scott Drug Co.*, 449 Mich. 550, 537 N.W.2d 208 (1995)). This rule is based on the equitable principle that "no one shall be permitted to . . . take advantage of his own wrong, or found any claim upon his own iniquity, or profit from his own crime." *Jacobson v. Pfizer, Inc.*, 618 F. App'x 509, 511 (11th Cir. 2015) (citation omitted). Florida law does not provide a wrongdoing plaintiff a get out of jail free pass just because the defendant did not participate in the same wrongdoing. As the court held in *In re Gosman*, "[e]ven if the parties did not participate in the same wrongdoing, Florida also follows a general principle that no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime." 382 B.R. at 838.

Nor does *Earth Trades* require that Grant Thornton be "equally at fault" with the Trustee, as the Trustee contends. Trustee Br. at 7. That argument misconstrues the language of *Earth Trades* and turns the *in pari delicto* doctrine on its head. As the Court correctly stated, the *in pari delicto* defense "is applied where the plaintiff is *at least* as at fault as the defendant." Order at 2 (emphasis added). Under the Trustee's artificial formulation of the *in pari delicto* doctrine, the defense would be barred when the plaintiff is more at fault than the defendant, an absurd result that would be inconsistent with the doctrine's purpose to prevent a plaintiff from recovering damages for its own wrongdoing. *Edwards*, 437 F.3d at 1152; *see also* Order at 2-3 (recognizing

this as one of the two purposes the *in pari delicto* doctrine serves). Indeed, courts applying Florida law have confirmed that the doctrine applies to bar legal remedies by a plaintiff who "had greater responsibility for the wrongdoing than the defendant." *In re Gosman*, 382 B.R. at 837-38. The Trustee has never argued that SMF was not at least substantially equally at fault with Grant Thornton.

Citing several cases, the Court also correctly ruled that it is "clear" that "a defendant need not affirmatively admit any wrongdoing in order to avail itself of the *in pari delicto* defense." Order at 5. As this Court observed, the Trustee cited no binding precedent to the contrary. *Id.* Nothing has changed on that front and reconsideration of this point is unwarranted.

**C. The Court's Reliance on *Gee* was Correct.**

The Court correctly relied on *Seidman & Seidman v. Gee*, 625 So. 2d 1 (Fla. 3d DCA 1992). In his effort to distinguish this case factually from *Gee*, the Trustee repeats his prior argument that *Gee* involved an "innocent" auditor whereas here there "is no dispute that Grant Thornton had actual knowledge of the fraud of certain rogue officers." Trustee Br. at 8 (emphasis removed). As he repeatedly did in his summary judgment briefing, the Trustee falsely equates awareness of the IA billing practice with knowledge that the IA billing practice was illegal or fraudulent.

The trustee's own audit expert, James Feltman, exposes the Trustee's argument for what it is: rhetoric and invective. Having reviewed Grant Thornton's work papers, emails and deposition transcripts, as well as numerous SMF and KPMG documents and other deposition transcripts, Feltman testified that there was no evidence "that Grant Thornton was aware of the challenges or problems with the IA and chose to look the other way." *See* Grant Thornton Reply Br., Bankr. ECF No. 254 at 12 (and record citations therein). So much, then, for the Trustee's attempt to

distinguish *Gee* on the basis that the auditor there, unlike Grant Thornton here, was "innocent" because it did not know the audit client was engaged in fraud.[2]

Even if the evidence showed that Grant Thornton knew of fraud, which it did not, nothing in *Gee* precludes the *in pari delicto* defense here. As the Trustee notes in his motion (Trustee Br. at 9), *Gee* relies upon *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982). The *Cenco* holding is not predicated upon the innocence of the auditor. Indeed, the court allowed that the accounting firm either never discovered the fraud or did discover it but failed to report it. *Id*. at 451. The court found that imputation was proper even if the accounting firm was an intentional tortfeaser. *Id.* at 456. In both *Gee* and *Cenco*, the court's focus was not upon the conduct of the accounting firm, but on whether the wrongful acts of management were aimed at outsiders, as opposed to stealing from the company. *Gee*, 625 So. 2d at 3; *Cenco, Inc.,* 686 F.2d at 454.

**D. The Trustee's Motion Seeks to Immunize Bankruptcy Trustees from the *In Pari Delicto* Defense.**

What the Trustee advocates in his reconsideration motion is nothing less than prohibiting the *in pari delicto* defense in actions against bankruptcy trustees. He makes "heads I win, tails I win" arguments, claiming on the one hand that the defense cannot apply unless the defendant engages in the same improper conduct as the debtor (Trustee Br. at 6 to 8), while claiming on the other hand that the defense cannot apply unless the defendant is innocent of the conduct engaged in by the debtor. Trustee Br. at 8 to 13. However, the Eleventh Circuit has already rejected the Trustee's position that bankruptcy trustees are entitled to special treatment. In *Edwards*, the court held that, under the Bankruptcy Code, "the debtor estate includes all 'legal or equitable interests

---

2 The auditing standards set forth by the Public Company Accounting Oversight Board, standards typically referred to as Generally Accepted Auditing Standards or "GAAS," recognize that determining whether an act is illegal "is normally beyond the auditor's professional competence," *see* AU § 317.03, and that "[a]n auditor ordinarily does not have sufficient basis for recognizing possible violations of . . . laws and regulations," *see* AU § 317.07.

*of the debtor* in property as of the commencement of the case.'" 437 F.3d at 1150 (citing 11 U.S.C. § 541 (a)) (emphasis in original). "'A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted' when the debtor filed for bankruptcy, and there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests *greater* than those of the debtor." *Id.* (citations omitted, emphasis in original). In reaching its holding, *Edwards* rejected many of the same policy arguments advanced by the Trustee in his reconsideration motion, such as his argument (Trustee Br. at 9) that any recovered funds will be distributed to innocent creditors. *Id.* at 1151. Moreover, the Trustee's policy arguments either were already made and considered by Judge Ray and this Court or are new arguments (*e.g.,* the comparative fault argument, Trustee Br. at 8 n.5), and thus are not the proper subject of a motion for reconsideration. *See, e.g., Grasso*, 2016 WL 2625746, at *1.[3]

**E. Florida Law Requires the Imputation of Management's Conduct to SMF.**

The court correctly applied the imputation analysis in granting Grant Thornton's motion. Contrary to the Trustee's argument, which ignores *In re Fuzion Technologies Group, Inc.*, 332 B.R. 225, (Bankr. S.D. Fla 2005), the imputation analysis in this case is straight-forward. Basic agency law provides that if a plaintiff's agent acts wrongfully, the wrongdoing is imputed to the plaintiff. *Id.* at 230. There is a limited exception to this rule when the agent who engages in the wrongdoing "is acting adversely to the interests of the principal." *Id.* at 231. This is called the

---

3 *State Department of Insurance v. Blackburn*, 633 So. 2d 521, 524 (Fla. Dist. Ct. App. 1994), upon which the Trustee relies, involved a motion to dismiss, where the plaintiff alleged that "the agents were acting adversely to the corporation's interests . . ." *Meyers v. Moody*, 693 F.2d 1196, 1208 (5th Cir. 1982) was an estoppel case; *in pari delicto* was not at issue. The same is true of *Standard Accident Insurance Co. v. Bear*, 184 So. 97, 103 (Fla. 1938). And the issue in *Farrington v. Flood*, 40 So. 2d 462, 465 (Fla. 1949), was not the application of the *in pari delicto* defense, but "whether a citizen and taxpayer of an area attempted to be incorporated into a municipality may question by a bill in equity the creation of the municipal corporation." *Id.* at 464. None of these cases advance the Trustee's arguments, and all are cited for the first time in his motion.

"adverse interest exception" and, if established by the plaintiff, it can bar imputation of defenses like the *in pari delicto* defense. *Id.*

The "adverse interest exception," however, is itself subject to an exception, which is known as the "sole actor exception." *Id.* Under the sole actor exception—and even though the agent was acting adversely to the principal—the agent's conduct will be imputed to the principal (thereby allowing an *in pari delicto* defense to apply) if the "agent is the sole representative of [the] principal." *Id.* In this scenario, then, imputation occurs despite the fact that the agent acted solely for his or her own benefit, rather than the principal's benefit. To challenge the existence of the sole actor exception, a plaintiff often tries to establish that "there was someone 'involved in [the debtor's] management who was ignorant of the ongoing fraud and could and would if advised of facts known to [the] defendant have taken steps to bring the fraudulent conduct to an end.'" *Id.* (citing *Breeden v. Kirkpatrick & Lockhart,* 268 B.R. 704, 710 (S.D.N.Y. 2001)). Thus, the presence of innocent directors or officers becomes relevant only when and if (1) the wrongdoer acted adversely to the interests of the company, and (2) the wrongdoer is a "sole actor." *See O'Halloran v. PricewaterhouseCoopers LLP,* 969 So. 2d 1039, 1045 (Fla. 2d DCA 2007).

Here, the issue of "sole actor" (and thus innocent management) never becomes relevant because the Trustee cannot establish the "adverse interest" exception. For the adverse interest exception to apply, the agent must be "acting entirely adverse to the principal, and the principal is in no way benefitting from the agent's actions." *In re Scott Acquisition Corp.,* 364 B.R. 562, 568 (Bankr. D. Del. 2007) (applying Florida law).

The Court correctly found (Order at 4-5) that the billing practices of SMF's management benefitted SMF, so whether SMF had innocent directors, which it did not, is irrelevant. The Trustee does not contest that the SMF billing practices (1) generated revenue for SMF, (2) contributed to

the profits of SMF, and (3) provided funds to finance SMF's business operations and pay down its debt. *See* Grant Thornton Mot. for Partial Summ. Judgment, Bankr. ECF No. 235 at 17, ¶7 (and record citations therein).

Nor is there any allegation or evidence that management misappropriated any SMF assets for themselves. *Id.* at 17, ¶8 (and record citations therein). The absence of looting distinguishes this case from *In re Investors Funding Corp.,* 523 F. Supp. 533 (S.D.N.Y. 1980), and *Schacht v. Brown,* 711 F.2d 1343 (7th Cir. 1983), on which the Trustee relies. Trustee Br. at 18. In both of those cases, the courts found that management had misappropriated company funds and thus the companies had not benefitted by having their existence prolonged. 523 F. Supp. at 541; 711 F.2d at 1347-48.[4]

Florida law is likewise clear that going into bankruptcy does not alter the benefit analysis: "[W]hen an officer or director's actions were not undertaken to loot or defraud his corporation and the corporation derived ***some benefit*** from them, the actions are imputed to the corporation, even if they ultimately result in the failure of the corporation." *Banco Latino Int'l v. Lopez,* 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000) (emphasis added); *see also Gee,* 625 So. 2d at 3 (holding that imputation applies even if there is only a short-term benefit to the company and the company later goes out of business because of the fraudulent conduct).

The Trustee, for the first time in his motion for reconsideration, tries to inject into this case language from Florida Jurisprudence, Second Edition (Trustee Br. at 14 to 17) that discusses when "notice to an agent is not notice to the principal." "Notice," of course, is not the issue here. In any event, the language quoted by the Trustee shows that a principal escapes imputation of notice only

4 The Trustee incorrectly claims that there is no dispute that overbilling the U.S. Postal Service violated the False Claims Act (Trustee Br. at 18), apparently on the basis of his own admission in this case. *See* Grant Thornton's Motion for Partial Summ. Judgment, Bankr. ECF No. 235 at 17, ¶6 (citing Bankr. ECF No. 237-1 Kapila Dep. 76:4-77:19). Grant Thornton does, in fact, dispute that a violation occurred.

by establishing what is in essence the adverse interest exception discussed above. Thus, the result is the same even under the (inapplicable) notice rule.

The existence of a benefit to SMF similarly defeats the Trustee's reliance on *O'Halloran*. That case actually confirms that the focus of the *in pari delicto* imputation analysis is "whether the misconduct was calculated to benefit the corporation." 969 So. 2d at 1046.

**F. The Trustee's Displacement Argument is Specious.**

The Trustee also improperly rehashes his argument that SMF's hiring of Soneet Kapila as Chief Restructuring Officer cleansed the company of wrongdoers and bars application of the *in pari delicto* defense. The Trustee was wrong in his summary judgment motion and continues to be wrong here. Kapila was engaged by SMF's Board of Directors under a contract. Grant Thornton Opp. to Trustee's Mot. for Partial Summ. Judgment, Bankr. ECF No. 234 at 27 (and record citations therein). Under that contract's terms, the Board, which comprised individuals whom the Trustee now claims engaged in wrongdoing, had the right to terminate Kapila as CRO without cause "by giving 5 days' written notice." *Id*. at 27-28 (and record citations therein). Thus, not only did the CRO not cleanse the company of the wrongdoers, but also the Board had the right to cleanse the company of him.

Nor did Kapila rid the company of the management wrongdoers before SMF went into bankruptcy. Both Michael Shore, the CFO, and Patricia Messenbaugh, the Chief Accounting Officer, continued to perform their functions after SMF's April 15, 2012 bankruptcy filing. *Id*. at 28 (and record citations therein). Shore was terminated as CFO on April 20, 2012 and Messenbaugh was terminated as CAO on July 15, 2012. *Id*. (and record citations therein). Moreover, in connection with Kapila's retention, Robert Beard became the CEO and President of SMF on March 16, 2012, and remained in that position until June 8, 2012. *Id*. at 28-29 (and record

citations therein). The SEC has accused Beard, Messenbaugh, and Shore of securities fraud due to SMF's billing practices. *Id.* at 29 (and record citations therein).

The legal premise for the Trustee's argument is also wrong because it depends on receivership cases such as *Scholes v. Lehmann,* 56 F.3d 750 (7th Cir. 1995); *Pearlman v. Alexis,* 2009 WL 3161830 (S.D. Fla. Sept. 25, 2009); and *In re E.S. Bankest, L.C.,* 2010 WL 2926203 (Bankr. S.D. Fla, July 23, 2010). Trustee Br. at 19. The Trustee is not a receiver; he is a bankruptcy trustee and is thus subject to the limitations the Bankruptcy Code places on his powers. As discussed above, the Eleventh Circuit has already held that, "unlike bankruptcy trustees, receivers are not subject to the limits of [Bankruptcy Code] section 541" which provides that the trustee "stands in the shoes" of the debtor. *Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 356-58 (3d Cir. 2001); *see also In re Hedged-Investments Assocs., Inc.,* 84 F.3d 1281, 1285 (10th Cir. 1996) ("Though the Seventh Circuit's reasoning in *Scholes* enjoys a certain appeal, . . . we cannot adopt it in this case. Put most simply [the plaintiff] is a bankruptcy trustee acting under 11 U.S.C. §541, and the bankruptcy law, apparently unlike the law of receivership, expressly prohibits the result [the plaintiff-trustee] urges." And while the Trustee does rely upon one case involving a trustee rather that a receiver, *In re Fuzion,* 332 B.R. 225, he neglects to note that decision was overruled in *Edwards*, 437 F.3d at 1152.

## III. CONCLUSION

The Trustee's motion falls far short of demonstrating that he is entitled to the extraordinary relief he seeks. This Court correctly granted Grant Thornton's motion for summary judgment and Grant Thornton respectfully requests that the Court deny the Trustee's amended motion for reconsideration.

Dated this 6th day of April, 2017.

By: /s/ Andrés Rivero

Elizabeth V. Tanis*
Georgia Bar No. 697415
e-mail: etanis@kslaw.com
Kevin M. Dinan*
WDC Bar No. 406627
e-mail: kdinan@kslaw.com
Cheri A. Grosvenor*
Georgia Bar No. 314360
e-mail: cgrosvenor@kslaw.com
Taylor T. Lankford*
WDC Bar No. 1002758
e-mail: tlankford@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
and

L. Louis Mrachek
Florida Bar No. 182880
MRACHEK, FITZGERALD, ROSE, KONOPKA, THOMAS & WEISS, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
Telephone: (561) 655-2250
Facsimile: (561) 655-5537
e-mail: lmrachek@mrachek-law.com

and

Andrés Rivero
Florida Bar No. 613819
RIVERO MESTRE LLP
2525 Ponce de Léon Blvd., Suite 100
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
e-mail: arivero@riveromestre.com

*Attorneys for Defendant Grant Thornton, LLP*

*Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I certify that on April 6, 2017, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/ Andrés Rivero__________
ANDRES RIVERO